**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **ABRAHIM FATA,** | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **CIVIL ACTION NO. 26-3661** |
| | : | |
| **CHARLES LANG, *et al.*,** | : | |
| **Defendants.** | : | |

**MEMORANDUM**

**HENRY, J.** **AUGUST 24, 2026**

Abrahim Fata, a frequent *pro se* litigant in this Court who often raises claims concerning an alleged multi-state conspiracy that was formed in 2017 to cover up sex crimes against his minor children, commenced this *pro se* civil action against numerous Defendants, asserting that this case arises under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c); the Trafficking Victims Protection Reauthorization Act ("TVPRA"), 18 U.S.C. § 1595; and the Civil Rights Act of 1871, 42 U.S.C. §§ 1983, 1985 and 1986. (*See* ECF No. 2 ("Compl.") at 48-50.) Fata seeks leave to proceed *in forma pauperis*. His claims in the instant case echo those raised in several previous civil actions and are based on the same series of events. As in those other cases, Fata's Complaint is predicated on his belief that a vast conspiracy exists to cover up crimes of sexual abuse against his minor children and to frame him for crimes he did not commit. For the following reasons, the Court will grant Fata leave to proceed *in forma pauperis* and dismiss his Complaint with prejudice as frivolous. Because Fata has a long history of filing frivolous pleadings in this Court, he will be required to show cause as to why an injunction should not be entered.

## I. LITIGATION HISTORY AND FACTUAL ALLEGATIONS[1]

Since 2024, Fata has filed eight civil actions in this Court prior to filing the instant case.[2] In these cases, Fata has repeatedly alleged the existence of a multi-state conspiracy formed in 2017 by a Christian religious based organization to cover up sex crimes inflicted on his minor children and to frame him for crimes he did not commit (hereinafter referred to as the "2017 conspiracy"). *See generally* Civil Action Nos. 24-2402, 24-4862, 24-6934, 24-6935, 24-6936, 26-0828, and 26-2185. Fata contends that the original members of the 2017 conspiracy have recruited numerous individuals throughout Pennsylvania, New Jersey, and Florida, including his family members, friends and acquaintances, private attorneys, state and federal law enforcement agencies and their employees, and state and county employees. In each of these cases, Fata asserted claims against various individuals, many of whom are named as Defendants in the current Complaint, alleging that their involvement with the 2017 conspiracy resulted in a violation of his civil rights or otherwise caused him harm.

Thus far, none of Fata's cases have proceeded past statutory screening. *See Fata v. Ortiz*, No. 24-2402, ECF Nos. 14 & 15 (dismissing conspiracy claims as factually frivolous), *aff'd* No. 24-3033 (3d Cir.); *Fata v. Commonwealth of Pennsylvania*, No. 24-4861, ECF Nos. 33 & 34 (dismissing civil rights claims challenging probation violation conviction and sentence as barred

[1] The allegations set forth in this Memorandum are taken from Fata's Complaint (ECF No. 2) and the publicly available dockets for prior civil actions filed by Fata, of which this Court takes judicial notice. *See Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) (courts may consider "matters of public record" in determining whether a pleading has stated a claim); *Oneida Motor Freight, Inc. v. United Jersey Bank*, 848 F.2d 414, 416 n.3 (3d Cir. 1988) (holding that court may take judicial notice of the record from previous court proceedings). The Court adopts the pagination supplied to the Complaint by the CM/ECF docketing system. Grammar, spelling, and punctuation errors in quotes from Fata's submissions are modified for clarity where necessary.

[2] Fata has also filed several cases in the District of New Jersey.

by *Heck v. Humphrey*, 512 U.S. 477 (1994) and pursuant to *Preiser v. Rodriguez*, 411 U.S. 475 (1973)), *aff'd* No. 25-1889 (3d Cir.); *Fata v. Amantine*, No. 24-4862, ECF Nos. 26 & 27 (dismissing conspiracy claims as factually frivolous, constitutional claims with prejudice for failure to state a claim, and state law claims without prejudice for lack of subject matter jurisdiction), *aff'd* No. 25-2077 (3d Cir.); *Fata v. Lang*, No. 24-6934, ECF Nos. 7 & 8 (dismissing conspiracy claims as factually frivolous, constitutional claims with prejudice for failure to state a claim, and state law claims without prejudice for lack of subject matter jurisdiction), *aff'd* No. 25-1886 (3d Cir.); *Fata v. Delgado*, No. 24-6935, ECF Nos. 7 & 8 (dismissing conspiracy claims as factually frivolous, constitutional claims with prejudice for failure to state a claim, and state law claims without prejudice for lack of subject matter jurisdiction), *aff'd* No. 25-1888 (3d Cir.); *Fata v. Ortiz*, No. 24-6936, ECF Nos. 7 & 8 (dismissing conspiracy claims as factually frivolous, constitutional claims with prejudice for failure to state a claim, and state law claims without prejudice for lack of subject matter jurisdiction), *aff'd* No. 25-1887 (3d Cir.); *Fata v. Young*, No. 26-0828, ECF Nos. 8 & 9 (dismissing conspiracy claims as both factually frivolous and for failure to state a claim, and dismissing RICO and RTKL claims for lack of jurisdiction), notice of appeal filed July 12, 2026 (ECF No. 13); *Fata v. Arcelly*, No. 26-2185, ECF Nos. 8 & 9 (dismissing conspiracy and RICO claims as factually and legally frivolous, and dismissing due process claims for failure to state a claim), notice of appeal filed July 1, 2026 (ECF No. 11).

In Fata's most recent case, Civil Action No. 26-2185, Fata averred that the 2017 conspiracy was formed "to coverup a sexual abuse on [his] two kids and to frame [him]." (*See* Compl. (No. 26-2185, ECF No. 2) at 18.) He asserted severe oppression by the "Pennsylvania, and New Jersey societies/communities, and governments, since 2017 . . . to the extreme of [his]

death, by either manipulating a fatal 'accident' or . . . to push [him] to suicide," and he claimed that the conspiracy "started with a Christian religious-based organization, that has invaded the communities" where he and his children reside, and he further alleges that this organization has recruited many relatives and government officials to form an enterprise to "oppress [him] religiously, psychologically, [and] systematically." (*Id.*) Fata asserted several claims based on this conspiracy, including a civil RICO claim wherein he alleged that an enterprise was formed to sabotage "home plans and housing" and keep him "in a perpetual state of 'crisis' to impede his legal access to federal courts." (*Id.* at 17, 20.)

Fata's current Complaint continues to assert the existence of the 2017 conspiracy, and this time Fata names nearly fifty individuals as Defendants, explaining in a forty-page, single-spaced statement "how [he] got [his son's] sex crime investigation reopened and the conspiracy to cover it up again." (Compl. (ECF No. 2) at 3-48.) He also contends that "[t]here was sex trafficking against [his] daughter" and the 2017 conspiracy has operated "to keep [him] in a mental crisis." (*Id.* at 8.) He refers to "[o]ne voluntary manslaughter" and asserts that many individuals have caused him "large amounts of oppression." (*Id.*) He claims that since 2021, he's "lost money from work, and 2 businesses, and was kept homeless for about 5 months." (*Id.*)

Fata's pending Complaint is lengthy, confusing, and reflects his beliefs that others are trying to harm him or his children. It focuses on Fata's version of events and conversations pertaining to child custody issues and his alleged "pursuit of justice" for his minor children. It is evident from the Complaint that Fata believes nearly everyone he knows or meets is either an active participant in the 2017 conspiracy or has been influenced by it because the Complaint is fraught with numerous references to alleged conspiratorial activity and his beliefs that numerous individuals from Pennsylvania, New Jersey, and Florida are plotting against him or trying to

prevent him from seeking "justice" for his children. *See*, *e.g.*, Compl., "Statement of the Case" at ¶ 31 ("At this time I already knew there was a conspiracy against me. . . . Everything made sense, the fights, the fatal accidents, the unemployment, the coincidents [sic]- everything. Nothing was a natural cause, NOTHING."); ¶ 43 ("I know they were trying to kill me."); ¶ 65 (asserting that an individual was "using the same tactics . . . to keep me distracted from getting justice on my son"); ¶¶ 66, 69-71 (alleging the 2017 conspiracy "to cover up the sex crime" on his son); ¶ 72 (referencing family members who "have been in on the conspiracy" concerning his children, asserting that they "help create an illusion/gaslight that [he] is imagining things, or that [he's] crazy, and the one who is hurting [his] own children"); ¶¶ 74, 81(b) (averring that "society is trying to get [him] to commit suicide"); ¶¶ 75, 77 (explaining that there "was a conspiracy to cover" up abuse "by getting [him] arrested and to the extreme of trying to murder [him]"); ¶ 79 (alleging that the conspiracy "escalated to trying to get [him] killed. Judges, and many governments are involved").

Fata alleges that in 2021, his "mindset was naïve and confused to reality" causing him to become a "victim of controlled religion" and "psychological warfare [that included] gangstalking . . . gaslighting and filibustering." (*Id.* at 8.) He was allegedly harassed by "the Christian controlled religion" and his phone was "hacked" with "reminder[s] of Jesus Christ." (*Id.* at 10.) Fata alleges that members of his family formed an "interstate communication ring" to block custody of his children in 2021. (*Id.* at 41.) As part of the "controlled religion psychological attacks," Fata avers that the mother of his son opened a child services case in February 2022 contending that he was "mentally unstable" and "dangerous to [his] children." (*Id.* at 13, 43.) Fata asserts that in May 2022, he learned that "everything was connected. The controlled religion and the sex crime, and the fatal accidents were not accidents, they were orchestrated.

Everything was one not separated. The police, the civilians, everything." (*Id.* at 16, 19.) He claims that someone staged a "paranormal scene" at his residence to terrorize his daughter, and "[a]s part of the enterprise's orchestrated residential destabilization strategy," one of the named defendants "severed the electrical power" to the clothes dryer, attempting to cause a "fatal accident or voluntary manslaughter." (*Id.* at 44.) In June 2022, Fata's daughter sent him a picture of "blood all over the [bathroom] sink and floor and toilet" and Fata knew that "they were trying to kill [him]." (*Id.* at 21, 45.) In August 2022, while Fata was incarcerated in the Lehigh County Jail ("LCJ"), "the state attempted to hijack custody" of his minor daughter by placing her with a family member. (*Id.* at 45.) Fata also claims that he was "ambushed" while exercising at a Planet Fitness in New Jersey when a woman "wearing a medical mask" laid down behind him, "executing zero athletic movements, replicating real-time tracking signals." (*Id.* at 46.) In May 2023, Fata was served with a "fraudulent child welfare report" and spent time incarcerated in LCJ for a "fabricated roadside assault charge" by a New Jersey officer. (*Id.* at 47.) In 2023, Fata "got a cat scan done" because he "kept questioning [his] own sanity – the controlled religious and secular harassment/attacks or psychological warfare." (*Id.* at 13.)

Fata alleges that the actions described in his Complaint "represent a continuous, ongoing, and multi-jurisdictional enterprise, existing solely to suppress evidence of child sexual exploitation through administrative fraud, physical threats, and institutional corruption, thereby depriving [him] of his constitutionally protected rights to due process and family integrity." (*Id.* at 48, ¶ 83.) As he has done in prior civil actions, he asserts a civil RICO claim, claiming that the Defendants are "members of an 'enterprise'" consisting "of an association-in-fact of individuals, state employees, and private entities" operating with the "common purpose" to suppress "child sexual exploitation evidence," maintain "control over institutional records," and

physically and economically destroy him. (*Id.* at 48.) He contends that Defendants obstructed justice by burying child abuse evidence, authoring secret police reports, and falsifying court dockets. (*Id.* at 49.) He alleges, *inter alia*, theft and destruction of his legal materials, the coerced silence of witnesses, a retaliatory arrest following his attempt to present evidence of child abuse, and an intentional refusal of the Pennsylvania Attorney General's Office "to investigate corroborated reports of child trafficking and enterprise-wide institutional corruption, which served to insulate Defendants from prosecution and permit the continued deprivation of [his] rights." (*Id.*)

Fata also asserts a claim pursuant to the TVPRA, averring that Defendants "knowingly benefitted . . . from participation in a venture which has engaged in the forced labor and exploitation of [his] minor children." (*Id.* at 49.) He alleges conspiracy claims in violation of 42 U.S.C. §§ 1985 and 1986 by parroting the language of the statutes and contending that he's been denied "his right to a fair legal process in custody and criminal proceedings." (*Id.* at 50.) Fata claims that "Defendants' actions were motivated by a discriminatory animus toward [his] protected status as an abuse-disclosure advocate and as a *pro se* litigant challenging intentional misconduct." (*Id.*) He also asserts that the Defendants, "specifically supervisors at Children & Youth Services and law enforcement officials," are liable for "constitutional deprivations" because they ignored "evidence of child sexual abuse and the ongoing retaliatory ambushes." (*Id.*) Finally, Fata asserts a "state-created danger and depraved indifference" claim, contending that he was ambushed and that "probation warrants" were "engineered." (*Id.*) He avers that although he "does not charge the crime of manslaughter, . . . Defendants' actions directly caused life-threatening danger." (*Id.*) Fata seeks monetary damages, "criminal referral and

investigation,"[3] as well as declaratory[4] and injunctive relief. (*Id.* at 51.)

## II. STANDARD OF REVIEW

The Court will grant Fata leave to proceed *in forma pauperis* because it appears that he is incapable of paying the fees to commence this civil action. Accordingly, 28 U.S.C. § 1915(e)(2)(B) requires the Court to screen and dismiss the Complaint if it is frivolous, malicious, fails to state a claim, or seeks relief from an immune defendant. Section 1915(e)(2)(B)(i) requires the Court to dismiss a complaint if it is frivolous, and § 1915(e)(2)(B)(ii) requires

---

[3] As Fata has been told on numerous prior occasions, he cannot compel a criminal investigation by filing a complaint with this Court. *See* Civ. A. Nos. 24-4862 (ECF No. 26 at 1, n.1); 24-6934 (ECF No. 7 at 1, n.1); 24-6935 (ECF No. 7 at 4-5, n.6); 24-6936 (ECF No. 7 at 4, n.6); and 26-2185 (ECF No. 8 at 17-18). "A private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another." *See Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973) (finding that a citizen lacks standing to contest prosecutorial policies "when he himself is neither prosecuted nor threatened with prosecution.") (citations omitted). Fata cannot compel a criminal investigation by filing a complaint with this Court because the United States District Courts have no authority to order any law enforcement agencies or prosecutors to initiate investigations or prosecutions. *See Wagner v. United States Gov't*, No. 23-1626, 2023 WL 3948820, at *1 (D.D.C. June 9, 2023) (citing *Otero v. U.S. Attorney General*, 832 F.2d 141, 141-42 (11th Cir. 1987); *Jafree v. Barber*, 689 F.2d 640, 643 (7th Cir. 1982)). "[A]n agency's decision not to prosecute or enforce, whether through civil or criminal process, is a decision generally committed to an agency's absolute discretion." *Wagner,* 2023 WL 3948820, at *1 (quoting *Heckler v. Chaney*, 470 U.S. 821, 831 (1985)); *see also Smith v. Friel*, No. 19-943, 2019 WL 3025239, at *4 (M.D. Pa. June 4, 2019), *report and recommendation adopted*, 2019 WL 3003380 (M.D. Pa. July 10, 2019) (collecting cases and stating "courts have long held that a civil rights plaintiff may not seek relief in civil litigation in the form of an order directing the criminal prosecution of some third parties").

[4] Fata seeks a declaratory judgment that Defendants' actions violated his rights under the United States Constitution, RICO, the TVPRA, and other federal statutes. (Compl. at 51.) Because declaratory relief is unavailable to adjudicate past conduct, Fata's request is improper. *See Corliss v. O'Brien*, 200 F. App'x 80, 84 (3d Cir. 2006) (*per curiam*) ("Declaratory judgment is inappropriate solely to adjudicate past conduct" and is also not "meant simply to proclaim that one party is liable to another."); *see also Andela v. Admin. Office of U.S. Courts*, 569 F. App'x 80, 83 (3d Cir. 2014) (*per curiam*) ("Declaratory judgments are meant to define the legal rights and obligations of the parties in the anticipation of some future conduct."). A declaratory judgment is also not "meant simply to proclaim that one party is liable to another." *Corliss*, 200 F. App'x at 84 (*per curiam*); *see also Taggart v. Saltz*, No. 20-3574, 2021 WL 1191628, at *2 (3d Cir. Mar. 30, 2021) (*per curiam*) ("A declaratory judgment is available to define the legal rights of the parties, not to adjudicate past conduct where there is no threat of continuing harm.").

dismissal if a complaint fails to state a claim upon which relief may be granted. A complaint is frivolous if it "lacks an arguable basis either in law or in fact." *Brown v. City of Philadelphia*, 750 F. App'x 171, 173 (3d Cir. 2018) (*per curiam*) (quoting *Neitzke v. Williams*, 490 U.S. 319, 325 (1989)). The use of the term "frivolous" in § 1915 "embraces not only the inarguable legal conclusion, but also the fanciful factual allegation." *Neitzke*, 490 U.S. at 325. Section 1915 accords judges "the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless[,]" including claims that describe "fantastic or delusional scenarios[.]" *Id.* at 327; *see also Mitchell v. Horn,* 318 F.3d 523, 530 (3d Cir. 2003). "[A] finding of factual frivolousness is appropriate when the facts alleged rise to the level of the irrational or the wholly incredible, whether or not there are judicially noticeable facts available to contradict them." *Smith v. N. Cambria Police,* No. 25-1273, 2025 WL 1324070, at *1 (3d Cir. May 7, 2025) (*per curiam*) (quoting *Denton v. Hernandez*, 504 U.S. 25, 33 (1992)). A claim is legally baseless if it is "based on an indisputably meritless legal theory." *Deutsch v. United States*, 67 F.3d 1080, 1085 (3d Cir. 1995) (holding frivolous a suit alleging that prison officials took an inmate's pen and refused to give it back).

Whether the complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 560 U.S. 544, 556 (2007)). At the screening stage, the Court will accept the facts alleged in the *pro se* complaint as true, draw all reasonable inferences in the plaintiff's favor, and ask only whether the complaint contains facts sufficient to state a

plausible claim. *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021), *abrogation on other grounds recognized by Fisher v. Hollingsworth*, 115 F.4th 197, 204 (3d Cir. 2024). In assessing the Complaint, the Court is mindful of its obligation to liberally construe a *pro se* litigant's pleadings. *See Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011).

## III. DISCUSSION

### A. Fata's Complaint Will Be Dismissed

Fata's Complaint is frivolous. As repeatedly explained to Fata in his prior civil actions, his allegations that a multistate conspiracy has been formed to push him to suicide, frame him for crimes he did not commit, and cover up the sexual exploitation of his minor children, are wholly incredible and lack a basis in fact.[5] Accordingly, the Court will dismiss his Complaint as

---

[5] Fata also asserts a civil RICO claim based on the 2017 conspiracy. (Compl. at 48-49.) In addition to being factually frivolous, Fata's RICO claims are legally baseless. RICO "makes it unlawful 'for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity.'" *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 362 (3d Cir. 2010) (quoting 18 U.S.C. § 1962(c)). To state a civil RICO claim, a plaintiff must plausibly allege the following elements: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Id.* (internal quotations omitted). "'Racketeering activity' is defined in the RICO statute to comprise the state law offenses of murder, kidnaping, gambling, arson, robbery, bribery, extortion, dealing in obscene matter, and dealing in a controlled substance or listed chemical, as well as several federal offenses such as mail and wire fraud." *Talley v. Halpern ex rel. Est. of Winderman*, No. 05-4184, 2005 WL 2002611, at *4 (E.D. Pa. Aug. 16, 2005) (citing 18 U.S.C. § 1961(1)). "According to the RICO statute, a 'pattern of racketeering activity' requires at least two acts of racketeering activity within a ten-year period." *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d at 363 (quoting 18 U.S.C. § 1961(5)). Additionally, a plaintiff must have sustained "injury to business or property" caused by the alleged RICO violation to bring a RICO claim. *Maio v. Aetna, Inc.*, 221 F.3d 472, 482–83 (3d Cir. 2000). Fata does not allege any conduct that could be considered racketeering activity for purposes of setting forth a legal basis for a RICO claim. *See Tapia-Ortiz v. Winter*, 185 F.3d 8, 11 (2d Cir. 1999) ("The claim that the defendants [including numerous judges, staff attorneys, and an assistant united states attorney] engaged in a RICO conspiracy by failing to properly address issues on appeal and 'bribing' witnesses to testify pursuant to plea agreements lacks any arguable basis in law and was properly dismissed as frivolous."); *Mierzwa v. Safe & Secure Self Storage, LLC*, 493 F. App'x 273, 276 (3d Cir. 2012) ("[C]onclusory allegations that defendants conspired for the purpose of defrauding [Mierzwa]

factually baseless, without leave to amend. *See, e.g., Caterbone v. Nat'l Sec. Agency*, 698 F. App'x 678, 679 (3d Cir. 2017) (*per curiam*) (dismissing appeal as lacking an arguable basis in fact where underlying allegations were based on plaintiff's assertion that he was a "victim of U.S. sponsored mind control and cointelpro harassment program"); *Mina v. Chester County*, 679 F. App'x 192, 195 (3d Cir. 2017) (*per curiam*) (affirming dismissal of plaintiff's claims that 62 defendants had a vast conspiracy against him spanning twenty years); *Price v. Fed. Bureau of Investigation*, No. 20-3015, 2020 WL 4368063, at *3 (E.D. Pa. July 30, 2020), *aff'd*, 845 F. App'x 106 (3d Cir. 2021) (finding plaintiff's allegations to be factually frivolous where plaintiff asserted that "numerous law enforcement agencies, attorneys, prison officials, and medical professionals have used neurological and psychological technology to control the 'four basic groups of his brain and mental functions' and "that the use of this 'technology' and 'mind control' has caused him numerous impairments and drove him to criminal and erratic behavior"); *Jorge v. Torres*, No. 18-14674, 2019 WL 2385942, at *3 (D.N.J. June 6, 2019) ("Plaintiff's factual allegations that the Police are monitoring his every move and that the Police do so by telephone recruitment 'of informants, spies, and willing constituates [sic]' is exactly the type of 'fantastic or delusional scenario[ ]' warranting dismissal under 28 U.S.C. § 1915(e)(2)(B)(i)." (alterations in original)).

There are additional reasons, however, as to why Fata's Complaint cannot proceed. Fata asserts a claim under the TVPRA, specifically referencing 18 U.S.C. § 1595. (Compl. at 49-50.) He contends that "Defendants' systematic movement of the minor children across state lines,

are simply inadequate to plead a valid RICO claim." (footnote omitted)). Fata's conclusory allegations that nearly fifty individuals in three different states, many of whom are employed in different counties or private entities, conspired with an unidentified "Christian religious-based organization" for the purpose of suppressing evidence of child exploitation are inadequate to plead a valid RICO claim, or any other conspiracy claim.

coupled with the coerced suppression of abuse disclosures, constitutes a clear violation." (*Id.* at 49.) Fata's claim is not plausible. Although 18 U.S.C. § 1595 provides for a civil remedy for violations of the TVPRA, Fata fails to allege any facts suggesting that Defendants either forced him into labor, trafficked him for forced labor, or benefitted financially from peonage or forced labor.[6] *See Brown v. U.S. Dist. Ct. for E. Dist. of Pa.*, No. 18-1108, 2018 WL 11463543, at *3 (E.D. Pa. Apr. 19, 2018), *aff'd sub nom.*, *Brown v. City of Phila. Off. of Hum. Res.*, 735 F. App'x 55 (3d Cir. 2018).

As in prior cases, Fata asserts claims under 42 U.S.C. §§ 1985 and 1986. (Compl. at 50.) Because he avers that Defendants conspired with the intent to deny him "equal protection of the laws," he appears to assert a claim under 42 U.S.C. § 1985(3). This section creates a cause of action against any two persons who "conspire . . . for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws. . . ." 42 U.S.C. § 1985(3). To state a plausible claim under § 1985(3) a plaintiff must allege the following elements: (1) a conspiracy; (2) motivated by a racial or class based discriminatory animus designed to deprive, directly or indirectly, any person or class of persons of the equal protection of the laws; (3) an act in furtherance of the conspiracy; and (4) an injury to a person or property or the deprivation of any right or privilege of a citizen of the United States. *Lake v. Arnold*, 112 F.3d 682, 685 (3d Cir. 1997). Significantly, the "language requiring intent to deprive of equal protection, or equal privileges

[6] As a convicted inmate who was previously in custody for a parole violation, Fata also has no constitutional claim arising from forced labor while he was incarcerated. *See Dmytryszyn v. Hickenlooper*, 527 F. App'x 757, 760 (10th Cir. 2013) (holding that in the context of a convicted prisoner, the courts have held that prisoners have no Thirteenth Amendment or liberty or property interest in payment for their work and may be lawfully compelled to work) (nonprecedential).

and immunities, means that there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." *United Bhd. of Carpenters & Joiners of Am., Local 610, AFL-CIO v. Scott*, 463 U.S. 825, 835 (1983) (quoting *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971); *see also Farber v. City of Paterson*, 440 F.3d 131, 136 (3d Cir. 2006) (explaining that "§ 1985(3) defendants must have allegedly conspired against a group that has an identifiable existence independent of the fact that its members are victims of the defendants' tortious conduct"); *Hauptmann v. Wilentz*, 570 F. Supp. 351, 386 (D.N.J. 1983) ("If the conspiracy only affects the plaintiff individually, the allegations will not satisfy the class-based animus requirement."), *aff'd sub nom., Appeal of Hauptmann*, 770 F.2d 1070 (3d Cir. 1985).

Moreover, a plaintiff must allege specific facts to state a plausible § 1985(3) claim. *Robinson v. McCorkle*, 462 F.2d 111, 113 (3d Cir. 1972) ("With near unanimity, the courts have rejected complaints containing mere conclusory allegations of deprivations of constitutional rights protected under § 1985(3). A conspiracy claim based upon § 1985(3) requires a clear showing of invidious, purposeful and intentional discrimination between classes or individuals."); *Grigsby v. Kane*, 250 F. Supp. 2d 453, 458 (M.D. Pa. 2003) ("[O]nly allegations which are particularized, such as those addressing the period of the conspiracy, the object of the conspiracy, and actions taken in furtherance of the conspiracy, will be deemed sufficient."). "[T]o properly plead an unconstitutional conspiracy, a plaintiff must assert facts from which a conspiratorial agreement can be inferred." *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 178 (3d Cir. 2010). "[A] bare assertion of conspiracy will not suffice." *Twombly*, 550 U.S. at 556.

These claims fail for several reasons. First, there is no allegation that a conspiracy was motivated by race or a class-based discriminatory animus as required by § 1985(3). Fata does not identify his race, nor does he make any allegation that race was the motivation behind the Defendants' alleged actions. Although Fata emphasizes his status as a *pro se* litigant (Compl. at 50), *pro se* status is not a protected class for purposes of stating a § 1985 claim. *See Finch v. Buechel*, No. 04-1856, 2005 WL 2807127, at *3 (W.D. Pa. Oct. 26, 2005) ("Regardless of which of these two subsections of § 1985 that she seeks to invoke, Finch cannot prevail on her claim because she only asserts "class-based invidious discrimination" as a *pro se* litigant."), *aff'd*, 188 F. App'x 139 (3d Cir. 2006); *Brik v. Brodie*, No. 23-4330, 2024 WL 1604194, at *6 (E.D.N.Y. Apr. 12, 2024) (collecting cases and stating that *pro se* status is not an "'immutable' quality beyond the class members' control"). Also, Fata asserts the existence of a conspiracy only in conclusory terms and provides no facts from which a conspiratorial agreement may be inferred. *Groce v. City of Phila. L. Dep't*, No. 21-5132, 2022 WL 493418, at *7 (E.D. Pa. Feb. 17, 2022) (dismissing conspiracy claim as wholly conclusory where the plaintiff failed to alleged facts regarding the formation of a conspiracy between any Defendants or any other individuals, the period of the conspiracy, or actions taken by the alleged conspirators to achieve the alleged purpose thereof). Fata's § 1985 claim is not plausible. The § 1986 claim also fails because § 1986 does not create an independent cause of action. *Black v. Bayer*, 672 F.2d 309, 312-13 n. 4 (3d Cir. 1982). Rather, § 1986 claims are derived from § 1985 claims, so that "plaintiff's § 1986 claim would fail with his § 1985 claim," if he has not stated a claim under Section 1985. *Id.*

**B. Fata's Abusive Litigation Warrants the Issuance of a Show Cause Order**

Fata's long trail of filing cases in this Court since 2024, asserting either frivolous or implausible claims based on the existence of an alleged multi-state conspiracy formed in 2017,

suggests he will not stop that conduct. Given his litigation history, and his continued assertions about a vast conspiracy whose purpose is to cover up the sexual exploitation of his children, push him to suicide, and frame him for crimes he did not commit, his abuse of the privilege of proceeding *in forma pauperis* in federal court must be addressed. Pursuant to the All Writs Act, 28 U.S.C. § 1651(a), a district court can impose filing injunctions on litigants who have engaged in "abusive, groundless, and vexatious litigation." *Yoder v. Wells Fargo Bank, N.A.*, 765 F. App'x 822, 824 (3d Cir. 2019) (*per curiam*). The "broad scope" of this power is limited by "two fundamental tenets of our legal system — the litigant's rights to due process and access to the courts." *Brow v. Farrelly*, 994 F.2d 1027, 1038 (3d Cir. 1993). The United States Court of Appeals for the Third Circuit has held that district courts "must comply with the following requirements when issuing such prohibitive injunctive orders against *pro se* litigants." *Id.* First, the Court should not restrict a litigant from filing claims "absent exigent circumstances, such as a litigant's continuous abuse of the judicial process by filing meritless and repetitive actions." *Id.*; *see also Matter of Packer Ave. Assoc.*, 884 F.2d 745, 747 (3d Cir. 1989). Second, the Court "must give notice to the litigant to show cause why the proposed injunctive relief should not issue." *Brow*, 994 F.2d at 1038; *see also Gagliardi v. McWilliams*, 834 F.2d 81, 83 (3d Cir. 1987). Third, the scope of the injunctive order "must be narrowly tailored to fit the particular circumstances of the case before the [ ] Court." *Brow*, 994 F.2d at 1038; *see also Chipps v. U.S. Dist. Ct. for the Middle Dist. of Pa.*, 882 F.2d 72, 73 (3d Cir. 1989).

As explained above, this is the ninth civil action that Fata has filed *pro se* in this Court since 2024 without the prepayment of any filing fees.[7] This case, like all those that preceded it,

[7] Several cases were filed while Fata was incarcerated at LCJ, and because he was a prisoner when those cases were filed, he was obligated to pay the filing fee in installments in accordance with the Prison Litigation Reform Act. *See* 28 U.S.C. § 1915(b).

is meritless and based on the same or similar factual allegations about a multistate conspiracy that was formed in 2017. His litigation conduct shows a continuous abuse of the judicial process by filing meritless and repetitive actions. All of his complaints have been dismissed on statutory screening and each of his appeals have been rejected by the Third Circuit on their merits.[8] Fata's latest Complaint, presenting frivolous claims based on the same 2017 conspiracy he has pled in his prior cases, and naming several Defendants he has already sued, gives the Court reason to believe that, unless enjoined, he will continue to file cases that lack serious merit with no economic consequence to himself, thereby wasting scarce judicial resources. *See, e.g., Kent v. Phila. Dep't of Hum. Servs.*, 813 F. App'x 736, 738 (3d Cir. 2020) (*per curiam*) ("The District Court reasonably concluded that these repeated, meritless lawsuits predicated on the same allegations warranted restrictions on Kent's litigating opportunities."); *Yoder,* 765 F. App'x at 824 (finding that *pro se* litigant's "series of meritless lawsuits show[ed] an abuse of the court system and an unwillingness to accept adverse judgments that, because it [was] likely to continue, warrant[ed] restrictions on [litigant's] litigating opportunities").

The Court is mindful that any proposed injunction must be narrowly tailored, and that Fata's filing activity is not necessarily neatly categorized. Although there is a sufficient record from which the Court can conclude that Fata has abused the *in forma pauperis* privilege, a prohibition on proceeding *in forma pauperis*, though not without precedent, *Elansari v. Pennsylvania*, No. 21-0141, 2021 WL 288792, at *6 (E.D. Pa. Jan. 28, 2021) ("Because of Elansari's demonstrated pattern of filing frivolous cases in this Court, he will be directed to show cause as to why he should not be subject to a pre-filing injunction prohibiting him from proceeding *in forma pauperis* in future lawsuits, with limited exception."), may be overbroad

[8] Two of Fata's appeals are currently pending having been filed this past July.

here. Notably, however, Fata's cases all concern different iterations of his claims based on an alleged multistate conspiracy whose purpose is to cover up the sexual exploitation of his minor children, push him to suicide, and frame him for crimes he did not commit. It would be appropriate, then, to enjoin Fata from filing any new lawsuits about this conspiracy, especially since all of Fata's claims have been tied to the existence of this conspiracy and have been raised against numerous defendants who, for differing reasons, are not subject to liability in a civil rights action. Accordingly, the Court will direct Fata to show cause as to why he should not be enjoined from filing any new lawsuits based on the alleged sexual exploitation of his minor children and the related conspiracy underlying his claims in this case and his prior cases — Civil Action Numbers 24-2402, 24-4862, 24-6934, 24-6935, 24-6936, 26-0828, and 26-2185. *See Kent*, 813 F. App'x at 738 (affirming injunction prohibiting filing of lawsuits based on duplicative subject matter where "[u]nder the injunction, Kent retained the right to file lawsuits based on other allegations against Philadelphia DHS or any other defendant"); *Yoder*, 765 F. App'x at 824 (affirming injunction prohibiting litigant from filing new cases about repetitive subject matter where she could file new cases about unrelated matters). This proposed injunction is directly proportional to Fata's abusive litigation activity in this Court. *Tilbury v. Aames Home Loan*, 199 F. App'x 122, 127 (3d Cir. 2006) (injunction prohibiting litigants from filing repetitive cases related to their mortgage and against numerous defendants was narrowly tailored where injunction prohibited filing of newly filed pro se cases and required representation by a licensed attorney).

## IV. CONCLUSION

For the foregoing reasons, the Court will grant Fata leave to proceed *in forma pauperis* and dismiss his Complaint as frivolous. Leave to amend will not be given as any attempt to

amend would be futile. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 112-113 (3d Cir. 2002) ("[D]ismissals of frivolous claims do not require leave to amend due to the long tradition of denying leave to amend . . . when amendment is inequitable or futile."). Two orders will be entered, one to dismiss this case in a final order pursuant to Fed. R. Civ. P. 58(a), and one to direct Fata to show cause why the proposed injunction should not issue.